UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ABEL CARDENAS,

    Plaintiff,

    v.

FLEETWOOD, INC.,

    Defendant.

No. 03 C 2399
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiff Abel Cardenas began working at Defendant Fleetwood Inc. in 1978, the year he arrived in this country from his native Columbia. He remained with Fleetwood for the next 24 years, until he was fired after missing work while attending his brother's funeral. Cardenas asserts that his discharge violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. Fleetwood has moved for summary judgment, arguing that Cardenas has no evidence that his termination was the result of age discrimination and that his discharge resulted from his failure to follow Fleetwood's attendance and reporting policy.

*Background*

Cardenas, born on October 27, 1952, began working for Fleetwood's predecessor company as a welder's assistant. Cardenas later became a welder, a position he held until the time of his discharge. Cardenas was responsible for producing equipment and machines such as rotofeeders and conveyors.

On the evening of January 24, 2002, Cardenas learned that his brother, who lived in Columbia, had committed suicide. Cardenas immediately purchased a ticket to fly to Columbia and be with his family and attend the funeral. Because he speaks only broken English, Cardenas

asked his friend Angel Rosado, who is fluent in English, to call Fleetwood the next morning and explain the reason for his absence.

Jerry Svoboda, a Fleetwood leadman, received Rosado's call the morning of Friday, January 25. Svoboda claims that he had difficulty understanding the caller, and that the caller conveyed only that Cardenas would not be reporting to work. Svoboda informed Cardenas's manager, Ruben Filipponi, that Cardenas would be absent and Fleetwood excused Cardenas's absence for that day.[1]

On Tuesday, January 29, Filipponi spoke with his supervisor and Fleetwood's business unit director, Vincent Jones, about Cardenas's absence. Filipponi explained that Svoboda had received a call indicating that Cardenas would be absent on Friday, but that he had no further contact from Cardenas. The following day Filipponi asked Director of Human Resources Zachary Volz whether he had received any messages from Cardenas. Neither Volz nor his assistant had heard from Cardenas. Jones also visited Volz that day to ask whether Cardenas had contacted Fleetwood. Volz again answered that he had not heard from Cardenas.

On Thursday, January 31, Jones informed Volz that he wanted to terminate Cardenas based on Fleetwood's "no-call no-show" attendance policy, which considers employees who fail to notify the company of their absence for three consecutive normal workdays as quitting without notice. Volz supported Jones's decision and called Cardenas at home. Volz left a voicemail message instructing Cardenas to call him. Cardenas's roommate, Carlos Ponton, received the

---

[1]Svoboda states that he was not told of the reasons for Cardenas's absence. Cardenas fails to dispute this fact. The most Cardenas can establish is that he asked Rosado to explain the reason for and length of his absence and that he believes this was done. Rosado could not be produced for deposition and did not provide an affidavit.

2

message and immediately contacted Volz. Ponton was surprised to learn that Fleetwood did not know why Cardenas was absent; he believed Fleetwood had been informed on Friday of Cardenas's trip to Columbia. Ponton informed Volz that Cardenas had experienced a death in the family and would return to work the following Monday. Volz told Jones about his conversation with Ponton, but Jones did not reconsider his decision to terminate Cardenas's employment.

Cardenas returned to the country on Sunday, February 3, and reported to Fleetwood the following day. Cardenas was not permitted to work but was instructed by Filipponi to wait in the cafeteria until he was called to meet with Volz and Jones. During the meeting, Jones asked Cardenas where he had been and why he had not contacted the company, notwithstanding the fact that both Jones and Volz now knew of the reason for his absence. Cardenas responded that both Rosado and Ponton had contacted the company to explain his whereabouts. He also explained that his brother had committed suicide and that he had traveled to Columbia to make funeral arrangements. Cardenas offered Jones documentation of his trip, including airline ticket stubs and a copy of his brother's death certificate. At the conclusion of the meeting, Cardenas was instructed to leave and return the following day. After the meeting, Jones told Volz that he felt terrible about the decision but that he had no intention of changing his mind given Cardenas's failure to notify Fleetwood of his absence.

Cardenas returned the following day and met again with Jones and Volz. Jones and Volz again asked Cardenas why he failed to call Fleetwood about his absence. Cardenas was then terminated for job abandonment and Filipponi escorted Cardenas from Fleetwood's property.

It is not disputed that the procedure Cardenas relied on to inform his employer of his absence – asking a friend to report in on his behalf – was a common and accepted practice for reporting absences at Fleetwood. It is also undisputed that Cardenas had ample vacation, personal time and bereavement leave to cover his six-day absence and that Fleetwood's attendance policy permits employees to notify the company of their absence as soon as practical in the event of an emergency. Finally, it is undisputed that prior to his absence, Cardenas was performing to Fleetwood's satisfaction and had no disciplinary records during his 24-year career.

***Standard for Summary Judgment***

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c)*. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not the time for credibility determinations or to "choose between competing inferences." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993) (citation omitted). However, Cardenas must offer more than "[c]onclusory allegations, unsupported by specific facts" to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citation omitted).

A plaintiff may prove employment discrimination under the ADEA using either the "direct" or "indirect" method. *Cianci v. Pettibone Corp.*, 152 F.3d 723, 727-729 (7th Cir. 1998).

4

"Under the direct method of proof . . . the plaintiff may show (either through direct or circumstantial evidence) that the employer's decision to take the adverse job action was motivated by an impermissible purpose, such as [ ] race or national origin or age." *Id*. at 727 (internal quotations and citation omitted). "A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003) (citing *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)).

Under the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), an employee must first establish a *prima facie* case of discrimination. Once that case is stated, the employer must articulate a legitimate, non-discriminatory reason for the employee's discharge. *Id*. The employer is then entitled to summary judgment unless the employee can present evidence that the employer's proffered non-discriminatory reasons are a pretext for discrimination. *Id*. An employee need only offer evidence from which an inference of age discrimination may be drawn in order to defeat summary judgment. *See Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir. 1996).

***Plaintiff's Direct Case of Discrimination***

In 1999, a subsidiary of Barry-Wehmiller Companies purchased Fleetwood Systems and changed its name to Fleetwood, Inc. Plaintiff alleges that just two years later, in 2001, his supervisor Ruben Filipponi told him that the "new company" had a "different mentality" and wanted to get rid of the older employees and replace them with younger people. Plaintiff offers this as direct evidence of discrimination.[2] Fleetwood asks me to disregard Filipponi's alleged

---

[2] He also offers this in support of his indirect case, which I discuss below.

statements because Filipponi was not responsible for the decision to end Cardenas's employment, the statements were not contemporaneous with Cardenas's discharge and were not causally related to the discharge, and because Filipponi is months older than Cardenas.

A decision-maker's statement that the company will make hiring or retention decisions on the basis of an employee's age constitutes direct evidence of discriminatory animus. *See, e.g.*, *Robinson v. PPG Indus., Inc.*, 23 F.3d 1159, 1154-65 (7th Cir. 1994). However, "[b]efore seemingly stray workplace remarks will qualify as direct evidence of discrimination, the plaintiff must show that the remarks 'were related to the employment decision in question.'" *Fuka*, 82 F.3d 1397, 1403 (7th Cir. 1996) (quoting *McCarthy v. Kemper Life Ins. Cos.*, 924 F.2d 683, 686-87 (7th Cir. 1991)). In this case, Jones made the decision to terminate Cardenas's employment after discussing his decision with Volz. There is no evidence showing that Filipponi made the decision to discharge Cardenas or was otherwise involved in the decision. At best, the evidence shows that Filipponi was concerned about Cardenas's continued absence.

In *Fuka*, the Court of Appeals for the Seventh Circuit found two stray remarks by non-decision-makers to lack any connection to the ultimate decision to terminate the plaintiff's employment. 82 F.3d at 1403-04 (distinguishing between the subject of the discriminatory comments - the employer's alleged hiring preferences - and the employment decision at issue in the case: the employer's termination practices). In this case, Filipponi's comments that the company was looking to get rid of older employees do suggest a motivation for Cardenas's termination. Nonetheless, these types of comments are frequently too speculative to serve as direct evidence of discrimination. *See Kadas v. MCI Systemhouse Corp.*, 255 F.3d 359, 360 (7th Cir. 2001) (supervisory employee with own discrimination suit stated that employer had an age-

6

discriminatory culture in which older employees were not given the same opportunity as younger employees; the comment was vague, speculative and of little probative value). Moreover, allegedly prejudicial comments made "at an unspecified date" before the action complained of and possessing "nothing, not even coincidence of time, to tie [them] to" the adverse action do not establish discrimination. *Id*. at 361.

Most problematic for Cardenas, Filipponi was not the decision-maker in his case and there is no evidence that he influenced the decision to end Cardenas's employment. *Cf. Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 397 (7th Cir. 1997) (testimony that decision-maker wanted to get rid of older people had "no probative value" when offered by low-level supervisor with no influence over personnel decisions). Cardenas's assumption that Filipponi must have been involved in the decision because he was Cardenas's manager, evaluated Cardenas's compensation and participated in other decision-making with Jones is not evidence that creates a genuine issue of material fact.[3]

I find less convincing Fleetwood's argument that Filipponi's comments were not sufficiently contemporaneous to constitute direct evidence of discrimination. Cardenas testified that Filipponi made the comments in 2001, though he could not pinpoint when, during the year, the comments were made. The nature of the comments, which referred to an alleged corporate philosophy, rather than an opinion about a particular employee at a particular time, and the potential gap between the comment and Cardenas's abrupt discharge do not render the comment utterly irrelevant, as Fleetwood suggests. *Cf. Olson v. Northern FS, Inc.*, 387 F.3d 632, 635 (7th

---

[3]For this reason, Filipponi's allegedly disparaging remarks to Cardenas about older employees and his corresponding praise of younger employees also fail as direct evidence of age discrimination.

Cir. 2004) (plaintiff did not prove direct evidence of discrimination based on comment that occurred five months before termination and was not made in direct reference to firing).

Moreover, I place no significance on Fleetwood's argument that Filipponi's comment cannot constitute evidence of discrimination because he is older than Cardenas. It is true that some cases from this Circuit suggest that plaintiffs who seek to prove age discrimination by an individual older than the plaintiff face an uphill battle. *See, e.g., Fairchild v. Forma Scientific Inc.*, 147 F.3d 567, 572 (7th Cir. 1998). Judge Posner has aptly noted the weakness of that argument in cases such as the one at-hand. *See Kadas*, 255 F.3d at 361.[4] In this case, Filipponi's age is irrelevant to the determination of whether Cardenas has established facts tending to show discrimination.

I have also considered Cardenas's arguments that Fleetwood's hiring and/or termination practices in the years preceding his own discharge constitute direct evidence that his termination was the result of prohibited age bias. As part of his effort to paint a "convincing mosaic" of circumstantial evidence, *Troupe*, 20 F.3d at 736, Cardenas points to Fleetwood's failure to re-hire (or, considered in the light most favorable to him, Fleetwood's decision to terminate) 14 individuals within the protected age group when Fleetwood Systems was acquired by a Barry-

---

[4] [T]he relative ages of the terminating and terminated employee are relatively unimportant. For it is altogether common and natural for older people, first, to exempt themselves from what they believe to be the characteristic decline of energy and ability with age; second, to want to surround themselves with younger people; third to want to protect their own jobs by making sure the workforce is not too old, which might, if 'ageist' prejudice is rampant, lead to RIFs of which they themselves might be the victims; and fourth, to be oblivious to the prejudices they hold, especially perhaps prejudices against the group to which they belong.

*Id*.

Wehmiller subsidiary in 1999. However, Cardenas offers nothing to connect the events of 1999 with his own termination, other than to argue that in combination with Filipponi's comments they paint a picture of an age-discriminatory corporate culture that raises a genuine issue of material fact sufficient to withstand summary judgment. They are not sufficient. Cardenas did not lose his job in 1999 and he offers no evidence that any age bias motivating the 1999 re-hiring/termination decisions influenced Jones's decision to discharge him in 2002. In other words, Cardenas has not offered evidence that but for his age, he would not have lost his position in 2002.

With a similar purpose, Cardenas also points to Fleetwood's termination of 12 individuals over the age of 40 between July 2001 and September 2002 as further evidence of an age-discriminatory culture. Fleetwood identified 64 involuntary separations between January 2000 and October 2003. Thirty-three of the employees dismissed during that period were younger than 40. Cardenas selects a 12-month period during that larger window: a period during which all of the discharged employees were over 40 - as evidence of discrimination. Yet he ignores that in the immediately preceding 18 months, 17 of 27 discharged employees were under 40 and similarly ignores that in the 12 months immediately subsequent to his arbitrary window, 16 of 25 discharged employees were under 40. Viewed together, these facts simply do not establish a pattern and practice of age discrimination, nor do they constitute direct evidence that Cardenas was discharged because of his age.

*Plaintiff's Indirect Case of Discrimination*

Cardenas contends in the alternative that he has established a *prima facie* case of age discrimination under the familiar *McDonnell Douglas* test. At issue is whether Cardenas has

9

presented facts demonstrating that he met Fleetwood's expectations and whether he can point to a substantially younger but otherwise similarly-situated employee who was treated more favorably. *See Griffin v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004). In this case, whether Cardenas satisfied his employer's legitimate expectations overlaps the analysis of whether he can show that Fleetwood's explanation for his termination is a pretext for discrimination. *See Fortier v. Ameritech Mobile Communs., Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998). Cardenas finds pretext in a combination of factors: his otherwise clean record and his attempt and intent to follow company policy; Jones's decision to enforce the discharge despite learning the reasons for Cardenas's absence before his return and despite Cardenas's eligibility for leave; the discharge and failure-to-rehire of employees within the protected age group between 1999 and 2002; and his manager's discriminatory comments.

It is undisputed that during his 24-year employment, Cardenas was a good employee with an unblemished work history. Fleetwood has raised no evidence that Cardenas was disciplined, nor was his attendance record questioned before he was discharged. Cardenas endeavored to contact Fleetwood with an explanation for his absence the day after learning of his brother's death. Moreover, Cardenas followed an acceptable practice when he asked a friend to call Fleetwood on his behalf.[5] Cardenas's problem is that there is no evidence his friend successfully completed this task.

---

[5]I place no weight on Fleetwood's argument that Cardenas failed to meet its expectations when he did not report his absence to a 24-hour hotline. Fleetwood presented no evidence that Cardenas was required to use this hotline to report his absence, and Cardenas presented evidence that Fleetwood employees were routinely permitted to call-in absences by asking a friend or relative to contact Fleetwood.

An employee's failure to report to work may demonstrate that the employee is failing to meet his employer's expectations and defeat the employee's *prima facie* case of discrimination. *See Campbell v. Dominick's Finer Foods, Inc.*, 85 F. Supp. 2d 866, 871 (N.D. Ill. 2000). However, Cardenas did not have a history of poor attendance or failing to properly report his absences prior to the January 2002 incident. *Cf. id.* (plaintiff could not establish he was meeting employer's legitimate expectations given 22 citations for unauthorized absences, 19 disciplinary actions and multiple suspensions over seven-year employment history). Nor did his termination follow a substantial change or decline in his work performance. *Cf. Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (plaintiff could not establish she was meeting legitimate expectations given evidence of poor job performance in 18 months prior to discharge). Cardenas's otherwise exemplary work history, including the lack of any prior attendance problems and his effort to contact his employer about his absence are facts that would allow a fact-finder to conclude he was meeting his employer's expectations.

However, Cardenas must also offer evidence that Fleetwood's explanation for his discharge is a pretext for discrimination. Cardenas may establish pretext by presenting evidence "tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge." *Testerman v. EDS Tech. Prods. Corp.*, 98 F.3d 297, 303 (7th Cir. 1996). Cardenas has not offered any evidence showing that Jones did not honestly believe that Cardenas's failure to successfully communicate the reasons for, and length of, his absence prior to Thursday, January 31, required his discharge. The fact that Jones was informed of the reasons for Cardenas's absence before his return, and found the situation regrettable but "stuck to his guns," does not render his decision a pretext for discrimination.

11

Cardenas also bases his pretext argument on, *inter alia*, the same pattern and practice allegations I rejected earlier in this opinion. I find them no more persuasive here. He also points to Filipponi's comments about the company's attitude toward older employees; yet no other facts point to age as a possible reason for Jones's decision to punish Cardenas for failing to report to work, and Cardenas has failed to show any nexus between these stray remarks and the decision to end his employment. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1116-17 (7th Cir. 1992).

Moreover, Cardenas has no evidence that Fleetwood applied its "no-call, no-show" policy in a discriminatory manner. Cardenas argues that another Fleetwood employee was not discharged after failing to call-in and report a six-week absence. Fleetwood, however, presented evidence that this employee was discharged but was re-hired three months later. The re-hiring of this employee does not establish that Fleetwood enforced its policy in a discriminatory manner; even if it did, the employee at the center of these allegations was also within the protected age group and was not substantially younger than Cardenas. *Cf. Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 893 (7th Cir. 1997) (observing that six- and seven-year gaps between the ages of employees subject to different treatment were "presumptively insubstantial").

A showing of pretext requires more than evidence that the decision was "mistaken, ill considered or foolish." *Jordan v. Summers*, 205 F.3d 337, 343 (7th Cir. 2000). Furthermore, "so long as [the employer] honestly believed [the] reasons [for the decision], pretext has not been shown." *Id*. While I need not "abandon good reason and common sense in assessing an employer's actions," *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 889 (7th Cir. 2001), Cardenas does not appeal to common sense or good reason but to speculation; and that is not enough to permit a finder of fact to consider his claims. In the end, Cardenas has done a decent job of proving that his discharge would be actionable if the law prohibited unwise or unfair

terminations (a point the decision maker might agree with in retrospect). But, this is not the law. Notwithstanding the tragedy of his situation, and his employer's decision to fire an employee with 24-years of loyal service, Cardenas's case fails for want of evidence suggesting that his discharge was the result of prohibited animus. For the reasons stated, defendant's motion for summary judgment is granted.

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: December 22, 2005